## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LON L. HAMPTON,

      Petitioner,               Civil No. 5:12-14401

                                        HONORABLE JOHN CORBETT O'MEARA

v.                               UNITED STATES DISTRICT JUDGE

STEVEN RIVARD,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Lon L. Hampton, ("Petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for six counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(b)(i). For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted following a jury trial in the Berrien County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions are the result of sexual conduct with the teenage daughter of his former fiancé. The victim testified that she first had sexual

1

relations with defendant beginning in March 2009 when she was 14 years old. Defendant continued to have a sexual relationship with the victim until June 2009, when the victim revealed that she was sexually active during a physical examination and later admitted that she was involved with defendant. Defendant was arrested shortly after the victim's revelation. Defendant sent the victim a letter while he was in jail awaiting trial. The letter asked the victim to say "it never happened" and explained that she should tell the authorities that she was angry because she did not want her mother to be remarried. Defendant was charged with six counts of criminal sexual conduct, including penile-vaginal penetration, fellatio, and cunnilingus when the victim was 14 years old and the same three behaviors when the victim was 15 years old.

**************************************************************

Defendant lived with the victim and her family for many months. When he first moved into the victim's house, he was engaged to the victim's mother. Defendant voluntarily contributed financially to the household, helping to pay for rent and groceries, and also performed some maintenance, the supplies for which he paid for himself. There was no evidence that his monetary contributions were a condition of him living in the house. Also, when the victim's mother was at work, defendant cared for the victim and her sister. Further, defendant testified that he had a family relationship with the victim's mother and her children and identified himself as the head of the family.

*People v. Hampton*, No. 297224, * 1, 5 (Mich.Ct.App. December 20, 2011).

Petitioner's conviction was affirmed on appeal. *Id., lv. Den.* 491 Mich. 943; 815

N.W.2d 461 (2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. THE DEFENDANT WAS UNLAWFULLY DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN TRIAL COUNSEL FAILED TO HAVE THE DEFENDANT INDEPENDENTLY EVALUATED AND TO RAISE AND PRESERVE PROPERLY AN INSANITY OR TEMPORARY INSANITY DEFENSE.

II. THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN

CONSTITUTIONS WHEN IT FAILED AND/OR REFUSED DURING
JURY SELECTION TO REMOVE CERTAIN PROSPECTIVE JURORS
FOR CAUSE WHO THEMSELVES HAD BEEN VICTIMS OF SEXUAL
ASSAULTS; IN THE ALTERNATIVE, THE DEFENDANT WAS
UNLAWFULLY DEPRIVED OF THE EFFECTIVE ASSISTANCE OF
TRIAL COUNSEL WHEN HE FAILED AND/OR REFUSED TO
EXERCISE PEREMPTORY CHALLENGES TO REMOVE THOSE
PROSPECTIVE JURORS.

III. THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT
OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER
PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN
CONSTITUTIONS WHEN IT ADMITTED EVIDENCE OF CERTAIN
BIBLE PASSAGES AND INFLAMMATORY STATEMENTS THE
DEFENDANT ALLEGEDLY WROTE IN A LETTER SENT TO THE
ALLEGED VICTIM.

IV. THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT
OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER
PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN
CONSTITUTIONS WHEN IT ENTERED A JUDGMENT OF
CONVICTION AND SENTENCE ON EVIDENCE THAT IS
INSUFFICIENT TO SUPPORT THE CONVICTION.

V. THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT
OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER
PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN
CONSTITUTIONS WHEN IT FAILED TO INSTRUCT THE JURY ON THE
MEANING OF THE TERM "HOUSEHOLD" IN THE CHARGED
STATUTE.

VI. THE TRIAL COURT UNLAWFULLY VIOLATED THE UNITED
STATES AND MICHIGAN CONSTITUTIONS IN SENTENCING THE
DEFENDANT TO PRISON TERMS OF 10-40 YEARS ON THE CSC 1
CONVICTIONS.

VII. THE PROSECUTOR COMMITTED REVERSIBLE MISCONDUCT
WHEN SHE TESTIFIED AS AN UNSWORN EXPERT WITNESS ABOUT
THE "MEXICAN TRUTH" BEING A SLANG WORD TO TELL
AUTHORITIES A LIE, THEREBY DENYING DEFENDANT-APPELLANT
HIS RIGHT TO CONFRONT THE WITNESS AND HIS DUE PROCESS

RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE VI AND XIV AMENDS; MICH CONST 1963 ART 1 § 20.

VIII. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO DECLARE A MISTRIAL OR OFFER A CURATIVE INSTRUCTIONS WHEN THE PROSECUTOR OFFERED UNSWORN EXPERT TESTIMONY REGARDING THE "MEXICAN TRUTH" BEING A SLANG TERM MEANING TO TELL AUTHORITIES A LIE, THEREBY DENYING DEFENDANT-APPELLANT HIS DUE PROCESS RIGHT TO A FAIR TRIAL. US CONST AMEND VI AND XIV; MICH CONST 1963 ART 1 § 17, 20.

IX. TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT OR REQUEST A MISTRIAL WHERE THE PROSECUTOR COMMITTED REVERSIBLE MISCONDUCT WHEN HE OFFERED UNSWORN EXPERT TESTIMONY ABOUT THE "MEXICAN TRUTH." THEREBY DENYING DEFENDANT-APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW. US CONST AMEND VI, XIV; MICH CONST 1963 ART 1 §17, 20.

X. THERE WAS INSUFFICIENT EVIDENCE TO CONVICT DEFENDANT HAMPTON OF FIRST DEGREE CSC WHEN THE EVIDENCE PRESENTED COULD ARGUABLY AT MOST CONVICT DEFENDANT HAMPTON OF THIRD DEGREE CSC, THEREBY DENYING DEFENDANT HAMPTON A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE US CONST. XIV, AMEND; MICH CONST 1963 ART 1 § 17.

XI. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A NECESSARILY LESSER INCLUDED OFFENSE OF CSC 3RD DEGREE WHEN THE EVIDENCE PRESENTED COULD ARGUABLY BE NO MORE THAT CSC 3RD DEGREE, THEREBY DENYING DEFENDANT HAMPTON OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE US CONST AM VI, XIV MICH CONST 1963 § 20.

XII. THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE DEPRIVED MR. HAMPTON OF HIS FEDERAL AND STATE DUE PROCESS RIGHTS UNDER US CONST, AMS V, VI, XIV AND CONST 1963, ART 1, § 17, 20.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
>> (1)      resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly established
>> Federal law, as determined by the Supreme Court of the
>> United States; or
>> (2)      resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a

5

state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have

6

previously been rejected in the state courts, it preserves the authority for a federal court

to grant habeas relief only "in cases where there is no possibility fairminded jurists could

disagree that the state court's decision conflicts with" the Supreme Court's precedents.

*Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against

extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary

error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5

(1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a

state court] is inconsistent with the presumption that state courts know and follow the

law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal

court, a state prisoner is required to show that the state court's rejection of his claim

"was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

*Harrington,* 131 S. Ct. at 786-87.

Finally, this Court notes that petitioner raises twelve claims for relief in his

petition. The Sixth Circuit recently observed: "When a party comes to us with nine

grounds for reversing the district court, that usually means there are none." *Fifth Third*

*Mortgage v. Chicago Title Ins.*, 692 F. 3d 507, 509 (6th Cir. 2012).

### III. Discussion

### A. Claims ## 1, 2, 3, 9, and 10. The ineffective assistance of counsel claims.

Petitioner contends that he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F. 3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792)). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles*

*v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388,

9

1407 (2011).

In his first claim, petitioner alleges that his trial counsel was ineffective for failing to have him evaluated by an independent psychiatrist to determine if there was a possible insanity defense.

Petitioner is not entitled to habeas relief on this claim for several reasons. First, petitioner's claim is without merit because he failed to present any evidence, either to the state courts, or to this Court, that he was legally insane at the time of the crime. *See e.g. Sneed v. Johnson,* 600 F. 3d 607, 611 (6th Cir. 2010). More specifically, in light of the fact that petitioner has failed to show that he has an expert who would testify that he was legally insane at the time of the offenses, counsel's failure to raise an insanity defense was not prejudicial to petitioner. *See Abdur'Rahman v. Bell,* 226 F. 3d 696, 715 (6th Cir. 2000).

Petitioner also cannot establish that counsel was ineffective for failing to present an insanity defense at trial, in light of the fact that such a mental state defense would have required counsel to admit that petitioner had sex with the underaged victim, which would have been inconsistent with petitioner's claim of innocence at trial. *See Bowling v. Parker,* 344 F. 3d 487, 507 (6th Cir. 2003).

Finally, as one court has noted: "[t]here is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors." *Weekley v. Jones*, 76 F. 3d 1459, 1463 (8th Cir. 1996)(citing C. Boehnert, Characteristics of Successful and Unsuccessful Insanity Pleas, 13 Law and Human Behavior 31, 34, 36-37

(1989)).  Since insanity or mental defenses are rarely successful, it would not have been unreasonable for counsel, at least under the facts of this case, to forego such a defense for a stronger defense theory. *See e.g. Silva v. Woodford,* 279 F. 3d 825, 851 (9th Cir. 2002); *See also Sneed,* 600 F. 3d at 611 (counsel not ineffective in failing to present insanity defense where "public's widespread skepticism of the insanity defense at the time of Sneed's trial in 1986 (circa the John Hinkley trial), indicate that this was not an attractive defense").

As part of his second claim, petitioner contends that his trial counsel was ineffective for failing to challenge for cause or peremptorily remove three jurors who had been victims of sexual assaults.

To maintain a claim that a biased juror prejudiced him, for purposes of maintaining an ineffective assistance of counsel claim, a habeas petitioner must show that the juror was actually biased against him. *See Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001); *See also Miller v. Francis,* 269 F. 3d 609, 616 (6th Cir. 2001)(when a claim of ineffective assistance of counsel is founded on a claim that counsel failed to strike a biased juror, the defendant must show that the juror was actually biased against him).

Petitioner has failed to show that he was prejudiced by counsel's failure to challenge these three jurors, in light of the fact that these jurors stated that they could be fair and impartial in deciding petitioner's case. *See Baze v. Parker,* 371 F. 3d 310, 318-22 (6th Cir. 2004).  Because petitioner has failed to show that any of the jurors who sat on

11

his case had an actual bias towards him, he has failed to show that he was prejudiced by counsel's decision not to strike these jurors.

As part of his third claim and in his ninth claim, petitioner contends that his trial counsel was ineffective for failing to object to the prosecutorial misconduct that he alleges as part of those claims.

As discussed when addressing petitioner's prosecutorial misconduct claims, *infra,* the prosecutor's alleged actions did not amount to misconduct.  Because the prosecutor's questions did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these questions. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).

In his ninth claim, petitioner also claims that counsel was ineffective for failing to request a mistrial when the prosecutor committed misconduct by offering unsworn testimony during her questioning of petitioner.  As discussed in addressing petitioner's prosecutorial misconduct claims, *infra,* the prosecutor did not commit misconduct, thus, there was no basis for the trial court to declare a mistrial.  Counsel's failure to make a frivolous motion for mistrial does not amount to the ineffective assistance of counsel. *See Rockwell v. Palmer,* 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008).

In his tenth claim, petitioner contends that trial counsel was ineffective for failing to seek a jury instruction on the lesser included offense of third-degree criminal sexual conduct.

A failure to request charges on all possible lesser included offenses may be proper

12

trial strategy. *See Tinsley v. Million,* 399 F. 3d 796, 808 (6th Cir. 2005).  In light of the fact that petitioner's primary defense strategy was to deny that he had sex with the victim, it was a reasonable trial strategy for counsel to forego requesting an instruction on the lesser included offense of third-degree criminal sexual conduct. *Id.*  Submission of lesser included offenses may give the jury a basis of finding petitioner guilty of a crime where the prosecution may be unable to prove the elements of the original crime beyond a reasonable doubt.  Because counsel may have wished to avoid this possibility, the decision not to request lesser included offenses is not ineffective assistance of counsel. *Colon v. Smith*, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989); *See also Lewis v. Russell,* 42 Fed. Appx. 809, 810-11 (6th Cir. 2002)(trial counsel's failure during murder trial to request jury instruction on lesser-included offense of voluntary manslaughter constituted reasonable strategic decision consistent with defendant's effort to seek full acquittal on basis of self-defense, and thus did not constitute deficient performance); *Edwards v. Mack*, 4 Fed. Appx. 215, 217-18 (6th Cir. 2001)(counsel's waiver of jury instructions on lesser-included offenses was not ineffective assistance, where defendant did not want jury instructed on lesser included offenses, but instead hoped to obtain an acquittal by having jury instructed on the murder charge only; moreover, even if counsel pursued strategy without the defendant's permission, it constituted a proper exercise of counsel's judgment to waive lesser included offense instructions).  Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

**B.  Claim # 2.  The jury selection claim.**

13

Petitioner next claims that the trial judge erred in failing to *sua sponte* remove for cause three jurors who had been sexual assault victims.

The Sixth Amendment guarantees the right to a trial by an impartial jury. *Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968).  The constitutional standard of fairness requires that a defendant in a criminal case have a panel of impartial, "indifferent" jurors. *Irvin v. Dowd*, 366 U.S. 717, 722(1961).

The question of whether a trial court has seated a fair and impartial jury is a factual one, involving an assessment of credibility. *Gall v. Parker,* 231 F. 3d 265, 308 (6th Cir. 2000)(citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)).  A state trial court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254 unless a habeas petitioner can prove otherwise by convincing evidence. *Gall v. Parker,* 231 F. 3d at 334.

Federal habeas review of a challenge for cause is deferential, respecting the state trial judge's proximity to the jury venire and his or her determinations of credibility and demeanor that *voir dire* involves. *See Wolfe v. Brigano,* 232 F. 3d 499, 502 (6th Cir. 2000).   "Challenges for cause are subject to approval by the court and must be based on a finding of actual or implied bias." *Hughes,* 258 F. 3d at 458 (quoting *Virgin Islands v. Felix*, 569 F.2d 1274, 1277 n. 5 (3rd Cir. 1978)).

In the present case, all three jurors indicated that they could be fair and impartial. In light of the fact that all three jurors indicated that they could be fair and impartial, the judge did not err in failing to remove them from the jury. *Cf. Mitchell v. Vasbinder,* 644

14

F. Supp. 2d 846, 861 (E.D. Mich. 2009)(Defense counsel was not ineffective in failing to challenge for cause two jurors who either were prior victims of crimes or who had family members who were prior victims of crimes, where each juror indicated that they could serve on the jury and be impartial, and there was no apparent reason to disbelieve the jurors' affirmations).  Petitioner is not entitled to habeas relief on his second claim.

### C.  Claim # 3.  The inflammatory evidence claim.

Petitioner next claims that the trial judge erred in admitting into evidence a letter that petitioner wrote to the victim, which referenced to passages in the Bible.  Petitioner contends that this letter was inflammatory, irrelevant, and highly prejudicial.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 908-09 (E.D. Mich. 2006)(federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a

15

state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

### D.  Claims # 4 and # 10.  The sufficiency of evidence claims.

Petitioner next contends that there was insufficient evidence to convict him of first-degree criminal sexual conduct.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas

16

relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. See *Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* In fact, the *Jackson* standard "is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F. 3d 525, 534 (6th Cir. 2011)(quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)(internal quotation marks omitted)). Therefore, for a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Petitioner was convicted of first-degree criminal sexual conduct on the theory that he and the victim were "members of the same household." See M.C.L.A.

750.520b(1)(b)(i). Petitioner's primary contention is that there was insufficient evidence presented to establish that he was a member of the same household as the victim.

The Michigan Court of Appeals has held that the term "household," within the criminal sexual conduct statute, is intended as an "all-inclusive word" for a family unit presiding under one roof for any time other than a brief or chance visit and "assumes a close and ongoing subordinate relationship that a child experiences with a member of his or her family or with a coercive authority figure." *People v. Garrison,* 128 Mich. App. 640, 646-47; 341 N. W. 2d 170 (1983). The length of residency or the permanency of residence has little to do with the meaning of the word as it is used in the statute. *Id.* In *Garrison,* the Michigan Court of Appeals held that the victim was "a member of same household" as the defendant, to sustain the defendant's conviction for first-degree criminal sexual conduct, where the victim lived with her father and stepmother during the school year and, on the day that school recessed for summer vacation, went to live with her mother and defendant in her mother's home pursuant to court-ordered extended visitation over summer months, and, thus, assumed a close and subordinate relationship with a member of her family or with a coercive authority figure.

Likewise, in *People v. Phillips,* 251 Mich. App. 100, 103-05; 649 N.W.2d 407 (2002), the Michigan Court of Appeals ruled that sufficient evidence existed for a rational jury to find beyond a reasonable doubt that defendant and the victim were members of the same household, to support the defendant's first-degree criminal sexual conduct conviction, where the victim was a 14 year old girl that the defendant and his

18

wife were in the process of adopting and who was living with defendant and his wife at the time.

In the present case, for reasons stated in greater detail by the Michigan Court of Appeals, *See Hampton,* Slip. Op. at * 5, there was sufficient evidence to conclude that petitioner was a member of the same household as the victim, so as to sustain his convictions for first-degree criminal sexual conduct. Petitioner was engaged to the victim's mother when he first moved into the house. Petitioner made financial contributions to the household and performed some repairs and maintenance, from supplies for which he paid for himself. When the victim's mother was away at work, petitioner watched the victim and her sister. Petitioner even testified that he had a family relationship with the victim's mother and her children and had identified himself as the head of the family. "Given the foregoing, the jury could conclude that a continuous and subordinating relationship existed and that [petitioner] was a coercive authority figure sufficient to constitute a "household" within the meaning of the statute." *Washington v. Makel*, 39 F.3d 1183 (Table); No. 1994 WL 577462, * 2 (6th Cir. October 19, 1994).

To the extent that petitioner argues that his first-degree criminal sexual conduct convictions must be vacated because there was no evidence that he was in a position of authority over the victim, this claim must be rejected. The Michigan Court of Appeals rejected petitioner's claim because petitioner had been charged under M.C.L.A. 750.520b(1)(b)(i), which requires proof that defendant was a member of the same household as the victim but does not require proof that the defendant was in a position of

19

authority over the victim. *Hampton,* Slip. Op. at * 9-10.

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6ᵗʰ Cir. 2002). Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Id.* This Court must therefore defer to the Michigan Court of Appeals' construction of the elements of state crimes. *See Coe v. Bell*, 161 F.3d 320, 347 (6ᵗʰ Cir. 1998). The Michigan Court of Appeals determined that being in a position of authority was not an element of the first-degree criminal sexual conduct charges that petitioner had been convicted of. This Court must defer to the Michigan Court of Appeals' construction of the elements of M.C.L.A. 750.520b(1)(b)(i) and therefore cannot grant habeas relief on any claim that the Michigan Court of Appeals misinterpreted Michigan's first-degree criminal sexual conduct statute. Petitioner is not entitled to habeas relief on his fourth and tenth claims.

### E. Claims # 5 and # 8. The jury instruction claims.

In his fifth claim and as part of his eighth claim, petitioner alleges instructional

error.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977).  The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.*  Moreover, a habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *See Hardaway v. Withrow,* 305 F. 3d 558, 565 (6th Cir. 2002).  Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. at 72.

In his fifth claim, petitioner contends that the trial court erred in failing to define

"living in the same household" for the jury.  The Sixth Circuit has held that "[a] trial court 'need not define familiar English words when the jury can appreciate their meaning without special knowledge.'" *U.S. v. Lentsch,* 369 F. 3d 948, 954 (6th Cir. 2004)(quoting *U.S. v. Mack*, 159 F. 3d 208, 218 (6th Cir. 1998)).  Here, the term "members of the same household" involves familiar English words that the jury could understand without special knowledge.  Because "members of the same household" is a commonly understood term, the Michigan Court of Appeals' rejection of petitioner's claim that the trial court failed to instruct the jury as to its meaning was not contrary to or unreasonable under clearly established federal law, so as to warrant habeas relief. *See e.g. Escobedo v. McGrath,* 196 Fed. Appx. 522, 523-24 (9th Cir. 2006).

As part of his eighth claim, petitioner contends that the trial judge erred in failing to properly respond to the jurors' question about whether they could consider the prosecutor's definition of "Mexican truth" that she gave while cross-examining petitioner.  The Michigan Court of Appeals rejected this claim, finding that the judge had properly responded to the jurors' question by instructing them that evidence was only the sworn testimony of the witnesses and the admitted exhibits, that the lawyers' questions were not evidence, and the jury should only accept statements of the lawyers if those statements are supported by the evidence or by the jury's own common sense and general knowledge. *Hampton,* Slip. Op. at * 9.

Where a jury, desiring additional instructions, makes explicit its difficulties, a trial judge should clear them away with concrete accuracy. *Bollenbach v. United States*,

22

326 U.S. 607, 612-13 (1946). However, a trial court is also entitled to exercise its sound discretion in deciding how best to respond to inquiries made by a jury during its deliberations. *See United States v. Brown*, 276 F. 3d 211, 216 (6th Cir. 2002).

In the present case, although the prosecutor questioned petitioner about whether the term "Mexican truth" was slang for lying to the police, she never introduced any evidence to support this. Accordingly, the judge's instruction to the jurors that they should consider as evidence only the sworn testimony of the witnesses and the admitted exhibits, that the lawyers' questions were not evidence, and the jury should only accept statements of the lawyers if those statements are supported by the evidence or by the jury's own common sense and general knowledge was a sufficient response to the jurors' question. Petitioner is not entitled to habeas relief on his instructional error claims.

### F.  Claim # 6.  The sentencing claim.

Petitioner next contends that the judge failed to consider mitigating evidence on his behalf at sentencing.

At the outset, this Court notes that petitioner's sentence of ten to forty years imprisonment was within the statutory maximum set under the first-degree criminal sexual conduct statute. A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp.2d 788, 797 (E.D.Mich.1999). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000). Generally, federal habeas review of a state court

sentence ends once the court makes a determination that the sentence is within the limitation set by statute. *Allen v. Stovall*, 156 F. Supp. 2d 791, 795 (E.D. Mich. 2001).

Petitioner's claim that the trial court failed to afford him individualized consideration of mitigating evidence on his behalf fails to state a claim upon which habeas relief can be granted, because the U.S. Supreme Court has limited its holding concerning mitigating evidence to capital cases. *Alvarado v. Hill,* 252 F. 3d 1066, 1069 (9th Cir. 2001)(citing *to Harmelin v. Michigan,* 501 U.S. 957, 996 (1991)); *See also Engle v. United States,* 26 Fed. Appx. 394, 397 (6th Cir. 2001)(Eighth Amendment does not require consideration of mitigating factors at sentencing in non-capital cases). Because petitioner had no constitutional right to an individualized sentence, no constitutional error occurred because of the state trial court's failure to consider mitigating evidence on his behalf at sentencing. *See Hastings v. Yukins,* 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002).

### G.  Claims # 3, 7 and 8.  The prosecutorial misconduct/mistrial claims.

The Court will discuss petitioner's third, seventh, and eighth claims together because they are interrelated.  In his third and seventh claims, petitioner alleges that the prosecutor committed misconduct.  As part of his eighth claim, petitioner claims that the judge should have declared a mistrial based upon the prosecutorial misconduct alleged in the seventh claim.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*,

24

344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F. 3d 1348, 1355 (6th Cir. 1993)).  More importantly, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87).  This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,]'". *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

     As part of his third claim, petitioner contends that the prosecutor improperly questioned the victim about religion by questioning her about a letter written to her by petitioner, in which petitioner referred to a passage from the Book of Deuteronomy in

25

the Bible.

Although petitioner has framed his claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). The Michigan Court of Appeals, in fact, concluded that the prosecutor's questions were not an attempt to reveal anyone's religious beliefs or opinions but were merely focused on determining why petitioner referenced the Bible passage in the letter that he wrote to the victim, in which he asked her to tell the police that the assaults never happened. *Hampton,* Slip. Op. at * 4. A criminal defendant's religious beliefs, superstitions, or affiliations with a religious group are properly admissible where they are probative of an issue in a criminal prosecution. *United States v. Beasley,* 72 F. 3d 1518, 1527 (11th Cir. 1996)(internal citations omitted); *See also United States v. Shalom,* 113 F. 3d 1236; 1997 WL 225514, * 4 (6th Cir. May 1, 1997)(Table). The First Amendment's protections of beliefs and associations does not preclude the admission of evidence of a defendant's religious beliefs where they are relevant to a trial issue. *United States v. Beasley,* 72 F. 3d at 1527. Because the prosecutor merely asked questions about the Biblical passages in the context of questioning both the victim and petitioner about the general contents of the letter and why it was written, the prosecutor did not improperly question the witnesses about the victim's or petitioner's religious beliefs.

26

In his seventh claim, petitioner alleges that the prosecutor committed misconduct by becoming an expert witness and offering testimony concerning the meaning of the term "Mexican truth."  In his related eighth claim, petitioner contends that the trial judge should have declared a mistrial because of this alleged misconduct.

In the present case, the prosecutor did not offer unsworn testimony concerning the meaning of the term "Mexican truth" but merely asked petitioner on cross-examination whether he was aware of the meaning of this slang term.  A prosecutor does not unduly inject himself into the proceedings or offer unsworn testimony by asking a witness an appropriate question. *See U.S. v. Gholston,* 10 F. 3d 384, 389 (6th Cir. 1993).  The prosecutor's question did not amount to the offering of unsworn testimony and thus was not improper.

The Court will reject petitioner's related claim concerning the trial judge's failure to declare a mistrial.  A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F. 3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders,* 34 F 3d 352, 354-55 (6th Cir. 1994). Because the prosecutor's question to petitioner about the meaning of the "Mexican truth" was not improper, the trial judge did not err in refusing to declare a mistrial.

**H.  Claim # 12.  The cumulative errors claim.**

Petitioner finally argues that he is entitled to habeas relief because of cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution

does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005). Therefore, petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id.*

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims.  The Court will also deny

petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See*

*Allen v. Stovall,* 156 F. Supp. 2d at 798.

## V. **ORDER**

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas

corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in*

*forma pauperis.*

s/John Corbett O'Meara
United States District Judge

Date:  March 26, 2014

I hereby certify that a copy of the foregoing document was served upon the parties
of record on this date, March 26, 2014, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager